MARTIN *v.* STATE.

Crim. 4063

Opinion delivered October 18, 1937.

712

 

*John C. Sheffield;* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted, tried and convicted in the circuit court of Phillips county for the crime of grand larceny for stealing a red cow, the property of Walter Moore, and, as a punishment for the crime, was adjudged to serve a term of five years in the state penitentiary, from which judgment an appeal has been duly prosecuted to this court.

Appellant was indicted at the April, 1937, term of court and his case was set for trial at the May term thereof. On the fourth day of May it was reported to the court that appellant had been and was sick and could not attend court, whereupon, the court ordered that he be taken to the city hospital at Helena and kept there under observation of Dr. Bruce, county physician, and treated. He was delivered to the hospital as directed, where he remained for several days at his own expense, and then was removed to his home. His case was set for July 5, 1937, at which time he did not appear, but sent the court a certificate of his attending physician, Dr. E. F. Norton, to the effect that he was still sick and unable to attend court for trial. The cause was again set for trial on July 6, and the sheriff was ordered to take charge of him and bring him to court for trial, which was done.

On July 6, appellant's attorney filed a motion for a continuance of the cause setting up, in substance, that appellant had been sick since May, 1937, and had been and was unable to confer with his attorney about his case, and was then unable to help in the selection of a jury, the examination of the witnesses or to, in any man-

ner, be of assistance to his attorney in making his defense. He, also, stated in his motion that his relatives were trying to make financial arrangements to send him to a specialist in Memphis which he believed they could do in the next ten days, and that his physician was of the opinion that he would recover if treated by a specialist.

The motion was presented to and heard by the court upon evidence introduced by both appellant and the state. At the conclusion of the evidence the court overruled the motion, over the objection and exception of appellant.

Three physicians were introduced as witnesses upon the hearing of the motion for a continuance. Dr. Norton testified, in substance, that he was of the opinion that when he was called in May to treat appellant that appellant was suffering from ptomaine poisoning for which he treated him without favorable results, and that he is now of opinion that he has pericarditis which continues over a period of one or two years, and sometimes becomes chronic; that appellant has lost thirty-five or forty pounds; that appellant was and is in no condition to be out of bed, and that in his opinion he is not able to participate in the trial of his case.

Appellant was sitting in court at the time the physicians were testifying.

Dr. Bruce, county physician, testified in substance, that on the first occasion he visited appellant, the symptoms indicated that he was suffering from belladonna poisoning; that his pulse was 120 and his temperature normal; that on his next visits his heart beats were 100 and his temperature still normal; that the pupils of his eyes were dilated; that he never discovered any symptoms of pericarditis; that he had made three reports to the court to the effect that appellant was able to attend court and stand trial without seriously impairing his condition or endangering his life, and that from his observation of him sitting in the court, he was able to remain for the trial of his case.

Dr. J. W. Nichols examined appellant on Sunday July 4, 1937, only two days before the trial and testified, in substance that in his opinion it would not endanger

the life of appellant to stand his trial except perhaps it might make him a little nervous.

Appellant's wife testified that he had been sick six or eight weeks, and that she was making arrangements to get money to take him to a specialist and thought she would be able to send him in about ten days.

We are unable to say from the evidence adduced that the trial court abused his discretion in overruling the motion for continuance. The evidence was conflicting between the physicians, and the appellant was present where the court could observe him. He remained in court during the trial, and there is nothing in the record to indicate that his condition was affected by doing so. This court recently said that the question of a continuance rests in the sound discretion of the trial court, and that its action will not be disturbed, on appeal, except where there is a clear abuse of discretion which amounts to a denial of justice. *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d) 946; *Smith* v. *State,* 192 Ark. 967, 96 S. W. (2d) 1.

Appellant assigns as error the insufficiency of the evidence to support the verdict. J. W. Moore testified that the cow was stolen on Friday night April 16, 1937; that the cow was a big red cow that weighed about one thousand pounds gross; that he and W. J. Bradshaw tracked the cow across the road from the pasture to a tree near appellant's home, and found the head and feet of the cow in a woods lot or a butchering lot near appellant's house.

J. W. Bradshaw testified that he had been looking after Moore's cattle, and that he helped Moore follow the tracks of the cow from the pasture across the road, and to the woods lot near appellant's home. He identified the head and feet of the cow in the woods lot as being the head and feet of Moore's red cow.

A deputy sheriff testified that after Moore and Bradshaw identified the head and feet of the cow he rounded up some suspects, among them Elbert Crawford, who admitted that he and Alfonso Drake helped appellant get the cow out of Moore's pasture Friday night; that they led her across the road and tied her to a tree until appellant could go home and get a rope and

some more help; that appellant came back in about thirty minutes in his truck with Jack Sims; that they all loaded the cow in the truck and hauled her to the butchering pen in the woods lot; that appellant was present when Elbert Crawford made the statement and made no denial of it. Witness also stated that he went to the tree where he said the cow was tied and found signs made by the truck.

On the trial, Elbert Crawford testified to the facts just as he stated them to the deputy sheriff, and, in addition, said that on Saturday morning he and appellant butchered the cow and loaded her into appellant's truck.

Jack Sims testified corroborating the statements made by Elbert Crawford.

M. M. Hollawell testified that he bought a carcass of a large cow from appellant Saturday morning, April 17, 1937.

The evidence of Elbert Crawford and Jack Sims is positive, but appellant argues that because they admitted being accomplices in the crime their uncorroborated testimony was insufficient upon which to convict him. This would be true if their evidence stood alone and was uncorroborated by substantial evidence, either direct or circumstantial, that tended to connect appellant with the commission of the offense. The tracks from the pasture to the tree where the cow was tied, the signs of the truck at that place, and the nearness of the woods lot to appellant's home where the cow was butchered, and the sale of a large cow to M. M. Hollawell Saturday morning, which had been freshly butchered, and appellant's failure to deny the statement of Elbert Crawford made to the deputy sheriff in his presence, are all substantial evidence of a circumstantial nature tending to connect appellant with the commission of the crime.

The question as to whether the accomplices were sufficiently corroborated was one for the determination of the jury as there is substantial evidence in the record tending to connect appellant with the crime charged. *Mullen* v. *State,* 193 Ark. 648, 102 S. W. (2d) 82.

No error appearing, the judgment is affirmed.